UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IVADEL HINKLE,

    Plaintiff,

v.                                        CASE NO. 8:14-CV-1106-T-MAP

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.
_____/

## ORDER

    This is an action for review of the administrative denial of disability insurance benefits (DIB) and period of disability benefits. *See* 42 U.S.C. § 405(g). Plaintiff argues the decision of the Administrative Law Judge (ALJ) is not supported by substantial evidence because the ALJ improperly substituted her opinions in place of those of treating and non-treating sources. After considering the parties' briefs (docs. 17, 18) and the administrative record, I find the ALJ applied the proper standards, and the decision that Plaintiff is not disabled is supported by substantial evidence. Therefore, I affirm the ALJ's decision.

    *A.    Background*

    Plaintiff Ivadel Hinkle was 57 years old at the time of the administrative hearing and had obtained an associate of arts degree in liberal studies and an associate of science degree in nursing. (R. 40-41) She has past work experience as a registered nurse for hospice and private home care companies. (R. 42) Plaintiff alleges disability commencing October 7, 2010, due to pulmonary hypertension, cardiovascular disease, myocardial infarction, depression, hyperlipidemia, hypertension, and depression. (R.169) After a hearing, the ALJ found Plaintiff has the severe

impairments of "major depression; anxiety; history of myocardial infarction; obesity; coronary artery disease; neurotic depression; esophageal reflux; degenerative joint disease; and essential hypertension." (R. 18)  Aided by the testimony of a vocational expert (VE), the ALJ determined Plaintiff is not disabled as she has the residual functional capacity (RFC) to perform medium work with the following limitations:

> the claimant must avoid concentrated exposure to extreme heat and humidity; and workplace hazards such as unprotected heights and moving machinery; the claimant is not able to work in an environment that involves performing fast production rate pace work; the claimant is not capable of making work related decisions or responding appropriately to work situations and routine changes in a work setting requiring complex tasks; and the claimant would be expected to be off task for no more than three minutes per hour.

(R. 20)

The ALJ determined that, with this RFC, Plaintiff could not perform her past relevant work as a registered nurse but could work as a medical records or admitting clerk or as a phlebotomist. (R. 27)  The Appeals Council denied review.  Plaintiff, who has exhausted her administrative remedies, filed this action.

    *B.*    *Standard of Review*

To be entitled to DIB, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *See* 42 U.S.C. § 423(d)(1)(A).  A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process,

2

promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has

been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

    C.    *Discussion*

Plaintiff makes one argument: the ALJ substituted her opinion for those of treating psychiatrist Susan Feder and one-time examining psychologist Gerald Hodan. After reviewing the medical evidence, I conclude this argument is not supported by the record.[1]

The ALJ must consider all impairments and the extent to which the impairments are consistent with medical evidence when assessing a person's RFC. 20 C.F.R. § 404.1529(a). The ALJ must also consider any medical opinions given by physicians, psychologists or other acceptable medical sources, which indicate the nature of a person's impairments. 20 C.F.R. § 404.1527. The RFC determination is ultimately reserved for the ALJ. Consequently, the ALJ was not bound to accept all of Drs. Feder's and Hodan's – or any other doctor's – findings regarding Plaintiff's functional limitations. *See* 20 C.F.R. § 404.1546(c).

Dr. Feder treated Plaintiff from June 2011 through March 2012, and then, in June 2012, Dr. Feder completed a mental RFC assessment at Plaintiff's request. (R. 434). In that assessment, the psychiatrist opined that due to major depression Plaintiff is unable to: complete a normal workday; perform work at a consistent pace; deal with normal work stress; and maintain regular attendance at a job (R. 436) Dr. Feder explained that while Plaintiff was motivated to improve her mental

---

[1] Plaintiff also argues in passing that the ALJ should have ordered a psychological examination or utilized a medical expert (doc. 17 at 7). Although Plaintiff does not offer any legal support for this argument, I find in this case the ALJ did not have a duty to order additional medical evidence or a consultative evaluation because there was sufficient record evidence to support the ALJ's disability determination, as discussed in this section. *See* 20 C.F.R. § 404.1519a(b); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision.").

health, was compliant with treatment, and was able to regain her activities of daily living by the end of her treatment with Dr. Feder, Plaintiff had a positive prognosis *only* if she could keep her physical and emotional stress low. (R. 434) The psychiatrist stated: "[Patient] cannot tolerate any level of physical/emotional stress without [causing] an increase in her depression and a [decrease] in her ability to just get out of bed each day." (R. 437) She continued: "Plaintiff went from a highly functioning nurse to someone who wanted to kill herself due to severe depression from acute/chronic physical illnesses. To keep her non-suicidal and non-depressed she cannot work as too stressful physically and emotionally." (R. 438)

The ALJ analyzed this assessment together with Dr. Feder's treatment notes, Plaintiff's work history and testimony, Plaintiff's husband's statements about Plaintiff's social functioning, the mental RFC submitted by Dr. Hodan (discussed below), and agency reports of contact with claimant (in May 2011) and her attorney (in January 2011) in which she stated she has no mental health conditions. The ALJ ultimately discounted Plaintiff's credibility, assigned Dr. Feder's and Dr. Hodan's mental RFC assessments little weight, and fashioned Plaintiff's RFC for medium work. Interestingly, Plaintiff does not challenge any of these determinations; instead she argues the ALJ substituted his opinion regarding Plaintiff's mental limitations in place of those reflected in Drs. Feder and Hodan's mental RFC assessments.

But my review of the ALJ's decision reveals that the ALJ considered Plaintiff's medical condition as a whole. She provided a detailed discussion of Plaintiff's treatment history related to her mental illnesses prior to making her findings. The ALJ properly found Plaintiff suffered from the severe mental impairments of severe depression and anxiety. (R. 18). The ALJ also found these impairments caused functional limitations that she incorporated into the RFC (R. 20). Moreover,

5

as I discuss below, the ALJ did not err in evaluating the medical opinions.

Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (*quoting* 20 C.F.R. § 404.1527(a)(2)). A court must give a treating physician's opinions substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted). With good cause, an ALJ may disregard a treating physician's opinion, but she "must clearly articulate the reasons for doing so." *Winschel*, 631 F.3d at 1179 (*quoting Phillips v. Barnhart*, 357 at 1240 n.8).

The ALJ assigned little weight to Dr. Feder's mental RFC assessment because it conflicts with the psychiatrist's own treatment notes. Substantial evidence supports this. Plaintiff began treating with Dr. Feder in June 2011 (approximately nine months after her alleged onset date). The month before, Plaintiff spoke with an agency representative about her mental impairments. According to the report of contact, Plaintiff stated she had no mental health conditions, was not alleging that a mental impairment prevents her from working, and "does not allege depression and is not receiving treatment, no admits, or ER visits." (R. 201) Nonetheless, shortly thereafter Plaintiff began treating with Dr. Feder.

Dr. Feder started Plaintiff on medication for her depression after their first session in June 2011. At her July appointment, the doctor noted she was "improving on just 3 weeks of meds," (R. 418) and she was "still a little sad but not tearful like before." (R. 416) It appears Plaintiff did not schedule an appointment for August 2011, as Dr. Feder recommended. Instead, the next treatment note is from October 2011. Plaintiff relayed that she had been experiencing panic attacks. According to Dr. Feder, "we discussed how she is grieving for what she has lost and ways to help with that," which included volunteering and exercise. (R. 413) At a November 2011 appointment, Plaintiff showed "much improvement" with her medications and her mood was also "much better." (R. 410-12). In February 2012, she was "overall feeling better." (R. 404) Dr. Feder treated Plaintiff with medication and also repeatedly advised Plaintiff to increase her activities and volunteer. (R. 404, 406). At Plaintiff's last appointment in March 2012, she reported she was "finally able to sleep," had a more positive mood and increased energy level. (R. 401) As a whole, Dr. Feder's treatment notes show a steadily improving patient. The treatment notes do not mention functional limitations. In fact, they encourage Plaintiff to exercise and volunteer. These activities are consistent with Plaintiff's RFC.

Plaintiff also takes issue with the ALJ's consideration of Dr. Hodan's opinion, again arguing the ALJ substituted her own opinion in its place. After reviewing the record, I find that the ALJ's decision to assign little weight to Dr. Hodan's mental RFC assessment is supported by substantial evidence. Dr. Hodan examined Plaintiff once, in September 2012, at Plaintiff's counsel's request. (R. 506) Dr. Hodan detailed Plaintiff's medical history – including her three heart attacks, which triggered her depression and her 45-pound weight gain in one year. (R. 506-07) He concluded that Plaintiff is experiencing severe depression with some suicidal thoughts and panic attacks as well as

post-traumatic stress disorder following a instance of sexual abuse as a child. (R. 507-08) Due to Plaintiff's depression, Dr. Hodan concluded she would struggle with concentration "to the point that she cannot sustain enough mental effort to take in detailed information, follow through on detailed or complex work assignments. Her depression is quite obvious and likely to draw some negative attention to her from others in a work setting." (R. 509) She was "not likely to be a reliable worker. . . . In addition, there are her various physical health problems, which need to be taken into consideration in terms of work assignments." (*Id*.)

One-time examiners are not considered treating physicians; therefore, their opinions are not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *see* 20 C.F.R. § 404.1527(e)(2). The ALJ, nonetheless, enumerated three reasons she was assigning Dr. Hodan's opinion little weight: it was a one-day snapshot of Plaintiff's mental functioning that conflicted with the improvement documented in Dr. Feder's treatment history; it was at odds with the ALJ's observations of Plaintiff's ability to remain focused during the hearing; and Plaintiff had been a highly functioning nurse for almost 30 years despite claiming an onset of mental health issues about 26 years ago. (R. 25) Considered together, these reasons support the conclusion that the ALJ considered all the medical evidence when fashioning Plaintiff's RFC. She did not err in the way Plaintiff contends.

   D.  *Conclusion*

For the reasons stated, it is hereby

ORDERED:

1. The ALJ's decision is AFFIRMED and the case is dismissed.

2. The Clerk of Court is directed to enter judgment for Defendant.

DONE AND ORDERED in Tampa, Florida on July 27, 2015.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE